UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMIRMOHAMMAD GHAMOUSHI-RAMANDI,<br><br>                    Petitioner,<br><br>          v.<br><br>JAMES JANECKA, et al.,<br><br>                    Respondents. | Case No. 5:26-cv-00885-SRM-JDE<br><br>**ORDER GRANTING PETITIONER'S** *EX PARTE* **APPLICATION FOR A TEMPORARY RESTRAINING ORDER [2]** |

Before the Court is Petitioner Amirmohammad Ghamoushi-Ramandi's ("Ghamoushi-Ramandi") *ex parte* application for a temporary restraining order. Dkt. 2. Respondents James Janecka, David Marin, Kristi Noem, and Pamela Bondi (collectively, "Respondents") oppose the *ex parte* application. Dkt. 10. The Court has reviewed the parties' arguments, relevant legal authority, and record in this case. The *ex parte* application is **GRANTED.**

## I.    BACKGROUND

The following facts are derived from the verified allegations in the Petition for Writ of Habeas Corpus ("Petition") and any attached exhibits. *See* Dkt. 1. Ghamoushi-Ramandi is an Iranian citizen. *Id.* at 7. He fled Iran fearing persecution, traveled to Mexico, and entered the United States in November 2023. *Id.*; Dkt. 1-1 at 2. Customs and Border Patrol

-1-

("CBP") apprehended him near Lukeville, Arizona and placed him into expedited removal proceedings. Dkt. 1 at 7; Dkt. 1-1 at 2. The United States Citizenship and Immigration Services ("USCIS") then placed him into non-expedited removal proceedings. Dkt. 1-2 at 1. Ghamoushi-Ramandi was later released on parole, and as a condition of his release, he agreed to periodically report to Immigration and Customs Enforcement ("ICE"). Dkt. 1 at 7. After he was released, Ghamoushi-Ramandi received employment authorization and began working as a welder. *Id.* Ghamoushi-Ramandi attended all his scheduled meetings with ICE. *Id.*

On June 26, 2025, ICE re-detained Ghamoushi-Ramandi while he was driving to work. *Id.* ICE told him they needed to ask him a few questions and that he would be released within two hours. *Id.* Instead, ICE took him to a processing center and transferred him to the Adelanto Detention Center where he remains in custody to this day. *Id.* Ghamoushi-Ramandi claims ICE did not notify him of the reasons for re-detaining him and did not provide him with a pre-deprivation hearing. *See id.* at 8, 10. While in detention, Ghamoushi-Ramandi requested a custody redetermination hearing before an immigration judge. *See id.* On February 18, 2026, an immigration judge denied release, finding that he was a flight risk. *Id.*

On February 24, 2026, Ghamoushi-Ramandi filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and this *ex parte* application. Dkts. 1; 2. Named as Respondents are James Janecka, David Marin, Kristi Noem, and Pamela Bondi. Dkt. 1 at 3–4. Ghamoushi-Ramandi asserts four claims against Respondents. The first claim asserts that Respondents violated the Fifth Amendment's Due Process Clause because he was entitled to "notice and an opportunity to be heard before his release, which after nearly two months, was summarily and arbitrarily revoked." *Id.* at 10. The second claim asserts that Respondents failed to comply with the post-removal revocation procedures established under 8 C.F.R. §§ 241.4(l) and 241.13(i). *Id.* at 10–11. The third claim asserts that Respondents' continued detention of Ghamoushi-Ramandi violates the Due Process Clause because it is not meant to ensure his appearance at future hearings or to prevent danger to

the community. Dkt. 1 at 11. The fourth claim asserts that Respondents have violated their constitutional duty to provide noncitizen detainees with basic human needs because they are subjecting Ghamoushi-Ramandi "to punitive conditions of confinement, characterized by unlawful degrees of overcrowding and medical neglect[.]" *Id.* at 12.

Now before the Court is Ghamoushi-Ramandi's *Ex Parte* Application for Temporary Restraining Order. Dkt. 2. Ghamoushi-Ramandi argues he is entitled to temporary injunctive relief on three claims, some of which are not raised in the Petition. *Compare* Dkt. 2 at 9–14, *with* Dkt. 1 at 10–12. Ghamoushi-Ramandi first contends he is likely to succeed on his second claim in the petition -- that Respondents failed to comply with the post-removal revocation procedures established in 8 C.F.R. §§ 241.4(l) and 241.13(i). *See* Dkt. 2 at 10–12. Next, he claims that Respondents' ongoing detention of him violates the "Supreme Court's unambiguous directive that immigration detainees may *only* be held for a 'period reasonably necessary to bring about the alien's removal from the United States.'" *Id.* at 12 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001)). Finally, he argues that his "continuing detainment as a flight risk is not supported by the facts and law established in *Rodriguez v. Robbins*, No. 13-56706 (9th Cir. 2018)." *Id.* at 13–14. Ghamoushi-Ramandi asks the Court to temporarily (1) enjoin Respondents from continuing to detain him and to order his immediate release from immigration custody; (2) enjoin Respondents "from re-detaining Ghamoushi-Ramandi without complying with all applicable regulatory, statutory, and [c]onstitutional requirements predicate to such detention"; (3) enjoin Respondents from "removing him from the United States to Iran or any other country without first complying with all [a]pplicable regulatory, statutory, and constitutional requirements predicate to such removal." *Id.* at 2. Respondents oppose the *ex parte* application. Dkt. 10. Ghamoushi-Ramandi filed a reply. Dkt. 12.

This matter is ready for decision.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 65(b) governs temporary restraining orders. A temporary restraining order is an extraordinary remedy meant to preserve the *status quo*

and to prevent irreparable harm "just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). To obtain a temporary restraining order, the movant must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The final two factors merge when a temporary restraining order is sought against the government, as is true here. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

In cases where there may be a strong showing on the balance of hardships but a weaker showing on the likelihood of success, a movant may still obtain a temporary restraining order under the Ninth Circuit's sliding-scale approach. *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022). Under this sliding-scale approach, a movant may obtain a temporary restraining order if he can show (1) there are serious questions going to the merits, (2) there is a likelihood of irreparable injury, (3) the balance of hardships tips sharply towards the movant, and (4) the injunction is in the public's interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "'Serious questions' are ones 'that "cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation."'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1192 (9th Cir. 2024) (quoting *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023)). "They 'need not promise a certainty of success, nor even present a probability of success, but must involve a "fair chance of success on the merits."'" *Id.* (quoting *Republic of the Phil. v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)). Even under this sliding-scale approach, a movant must still "make a showing on all four prongs." *Cottrell*, 632 F.3d at 1135.

The movant carries the burden of persuasion and must make a clear showing of entitlement to the requested relief. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). Given the exigent nature of a temporary restraining order, a movant can rely on allegations

in a verified complaint, exhibits, declarations, or affidavits, even if inadmissible under the Federal Rules of Evidence. *See Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011) ("A verified complaint may be treated as an affidavit, and, as such, it is evidence that may support injunctive relief."), *overruled on other grounds by Board of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc); *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."); *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972) ("A verified complaint or supporting affidavits may afford the basis for a preliminary injunction."). Unverified allegations in the pleadings and unsupported and conclusory statements are not enough to prevail on a motion for a temporary restraining order. *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (reversing district court's order granting preliminary injunction where it relied on unsupported and conclusory statements); *Greenberg v. Guzman*, No. CV 14-00866, 2014 WL 12569551, at *2 (C.D. Cal. July 28, 2014) ("A motion for preliminary injunction must be supported by '[e]vidence that goes beyond the unverified allegations of the pleadings.'") (quoting 9 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2949 (2011)).

## III.   DISCUSSION

Before turning to the merits of the *ex parte* application, the Court must first decide whether it has subject matter jurisdiction over this action, and whether Ghamoushi-Ramandi was required to exhaust administrative remedies before bringing this Petition.

### A.   Subject Matter Jurisdiction

Respondents argue the Court lacks subject matter jurisdiction over this action for two reasons. First, they argue that 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)(ii)[1] deprive the Court of jurisdiction to review ICE's decision to re-detain Ghamoushi-Ramandi and the IJ's decision to deny Ghamoushi-Ramandi release on bond. Dkt. 10 at 5–6. Second, they

---

[1] "Section" will refer to sections within Title 8 of the United States Code.

argue that Sections 1252(g), 1252(b)(9), and 1252(a)(5) deprive the Court from hearing the claims generally. *See id.* at 6–9. Each argument is addressed in turn.

1.     8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)(ii)

The Attorney General possesses the discretion to detain and release noncitizens pending removal proceedings. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(b). Upon arrest, the Attorney General or certain authorized officers must initially decide whether to continue to detain the noncitizen or release him on bond or conditional parole. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(c)(8). This is otherwise known as the initial determination hearing. A noncitizen may appeal this initial custody determination to an immigration judge who may detain or release a noncitizen. 8 C.F.R. § 1236.1(d)(1).

Sections 1226(e) and 1252(a)(2)(B)(ii) strip federal courts of jurisdiction to review certain actions within the discretion of the Attorney General or the Secretary of Homeland Security. *See* 8 U.S.C. §§ 1226(e), 1252(a)(2)(B)(ii). Section 1226(e) specifically prohibits courts from reviewing the Attorney General's discretionary decision to detain or release a noncitizen pending removal. *See also Jennings v. Rodriguez*, 586 U.S. 281, 295 (2018) ("[Section] 1226(e) precludes an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release.") (citation modified).

Section 1252(a)(2) contains broader jurisdiction stripping language and enumerates three categories of agency determinations that federal courts lack jurisdiction to review. *See* 8 U.S.C. § 1252(a)(2)(A)–(C); *Kucana v. Holder*, 558 U.S. 233, 245 (2010). At issue here is Section 1252(a)(2)(B)(ii), which bars federal courts from reviewing "any other" discretionary decision conferred by statute to the Attorney General or Secretary of Homeland Security under 8 U.S.C. §§ 1151 through 1381. *See* 8 U.S.C. § 1252(a)(2)(B)(ii); *Kucana*, 558 U.S. at 239 n.3, 249. This necessarily includes the Attorney General's decision to detain a noncitizen under Section 1226(a).

Respondents argue Sections 1226(e) and 1252(a)(2)(B)(ii) strip the Court of jurisdiction to review Petitioner's "custody determination and bond orders[.]" Dkt. 10 at 6.

However, Ghamoushi-Ramandi's claims are constitutional in nature and do not challenge actions that fall within the discretion of the Attorney General or the Secretary of Homeland Security. The first and second claims raise due process and regulatory challenges to the procedures Respondents afforded Petitioner when they re-detained him. *See* Dkt. 1 at 10–11. The third claim asserts that Respondents' ongoing detention of Petitioner violates his substantive due process rights because it does not serve the purposes of immigration detention. *See id.* at 11. The fourth claim asserts that the conditions of confinement violate Petitioner's due process rights. *See id.* at 12; *see also* Dkt. 12 at 6–7 ("In this case, Petitioner does not ask the Court to review the government's decision to commence removal proceedings against him or the merits of his underlying requests for relief. Rather, Petitioner *challenges the lawfulness of his re-detention*.") (emphasis added), at 9 ("Here, Petitioner challenges the legality of his re-arrest, revocation of parole, and re-detention, not the government's decision to commence removal or anything related to the merits of his removability."). Thus, neither Section 1226(e) nor Section 1252(a)(2)(B)(ii) deprive the Court of jurisdiction over Ghamoushi-Ramandi's claims. *See Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024) (explaining that Section 1226(e) "d[oes] not strip federal courts of traditional habeas jurisdiction. . . . [It] restricts jurisdiction only with respect to the executive's exercise of discretion, but that discretionary judgment does not include constitutional claims or questions of law.") (internal citations and quotation marks omitted); *Hernandez v. Mullin*, No. 5:26-CV-00585, 2026 WL 846037, at *4–5 (C.D. Cal. Mar. 24, 2026) (concluding Section 1252(a)(2)(B)(ii) did not preclude judicial review of petitioner's due process challenges to his continued detention).

            2.    8 U.S.C. § 1252(g)

Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim . . . from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any" noncitizen. 8 U.S.C. § 1252(g). This section should be read narrowly to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate*

cases, or *execute* removal orders.'" *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) (quoting *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)). Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at 997. In fact, the Ninth Circuit has specifically held that Section "1252(g) does not bar due process claims." *Id.* (citing *Walters v. Reno*, 145 F.3d 1032, 1052–53 (9th Cir. 1998)).

As discussed above, Ghamoushi-Ramandi does not challenge the decision to commence, adjudicate, or execute a removal order. *See* discussion *supra,* Section III.A.1. Rather, he takes issue with the process Respondents afforded him when they re-detained him. This falls outside Section 1252(g)'s scope.

### 3.    8 U.S.C. § 1252(a)(5) and 1252(b)(9)

Section 1252 is titled "Judicial review of orders of removal." Section 1252(a)(5) and (b)(9) are "two provisions aimed at channeling noncitizens' claims into the petition-for-review process." *Ibarra-Perez*, 154 F.4th at 999. Section 1252(a)(5) specifically provides that "a petition for review filed with an appropriate court of appeals. . . shall be the sole and exclusive means for judicial review of *an order of removal*[.]" 8 U.S.C. § 1252(a)(5) (emphasis added).

Section 1252(b)(9) is "a 'zipper clause' that consolidates all 'questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien' into a petition for review." *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012) (quoting 8 U.S.C. § 1252(b)(9)). The Supreme Court has cautioned against reading the "arising from" language in Section 1252(b)(9) expansively because it would lead to "absurd" results and make certain claims challenging a noncitizen's detention "effectively unreviewable." *Jennings*, 583 U.S. at 293. "[C]laims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016). Section 1252(b)(9) thus "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek

removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (citation modified).

In their Opposition, Respondents recite Section 1252(a)(5) and (b)(9)'s legal standards. *See* Dkt. 10 at 7–8. What they fail to include is any legal analysis regarding how Petitioner's specific due process claims are barred by Section 1252(a)(5) and (b)(9). *See id.* At best, Respondents make the sweeping argument that any removal-related action can only be reviewed through the petition-for-review process. *Id.* at 8.

This argument is unpersuasive. First, Petitioner does not seek review of an order of removal; thus, Section 1252(a)(5) on its face does not apply. *See Ibarra-Perez*, 154 F.4th at 1000 (concluding Section 1252(a)(5) did not bar petitioner's claims where he did not seek review of his removal order).

Next, Section 1252(b)(9) does not bar Ghamoushi-Ramandi's due process claims. The primary contention in the Petition is that Respondents did not afford him adequate process before they re-detained him. To accept Respondents' sweeping interpretation of Section 1252 (b)(9) would lead to absurd results as it would render the constitutional and regulatory challenges to his detention "effectively unreviewable." *Jennings*, 583 U.S. at 293. The Ninth Circuit has held that "claims challenge ng the legality of detention pursuant to an immigration detainer are independent of the removal process" are not barred by Section 1252(b)(9). *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020). Thus, Petitioner's claims are not barred by either Section 1252(a)(5) or (b)(9).

**B.    Administrative Exhaustion**

A habeas petitioner must "exhaust all available judicial and administrative remedies before seeking relief under [8 U.S.C.] § 2241." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). "Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). Title 28 U.S.C. § 2241 ("Section 2241") "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Castro-Cortez v. Immigr. & Naturalization Serv.*, 239 F.3d 1037, 1047 (9th Cir. 2001). Exhaustion in Section 2241 habeas proceedings is a prudential

requirement, not a jurisdictional one. *Acevedo-Carranza*, 371 F.3d at 541. Prudential exhaustion may be required if:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quotation marks omitted). Even if these factors weigh in favor of prudential exhaustion, this requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

Respondents' argument again rests on the premise that Ghamoushi-Ramandi challenges the immigration judge's bond decision. This misses the mark since the gravamen of the Petition, which Ghamoushi-Ramandi makes clear in his reply, is a challenge to the constitutionality and legality surrounding the process *ICE* afforded him when he was re-detained. For these reasons, the Court concludes that the *Puga* factors do not bar it from reviewing Petitioner's claim.

### C.   Merits of the *Ex Parte* Application

#### 1.   Likelihood of Success on the Merits

Having determined the Court has subject matter jurisdiction over this action, the Court will review the merits of the *ex parte* application. In the Petition, Ghamoushi-Ramandi raises four claims. Under his first claim, he alleges Respondents violated his procedural due process rights because they did not provide him with notice or an opportunity to be heard *before* he was detained. Dkt. 1 at 10. Under his second claim, he alleges Respondents violated the post-removal revocation procedures under 8 C.F.R. §§

-10-

241.4(l) and 241.13(i). *Id.* at 10–11. Under the third claim, Ghamoushi-Ramandi asserts that Respondents violated his substantive due process rights because his ongoing detention does not serve the two purposes of immigration detention: to ensure appearance at a future proceeding or to prevent danger to persons or property. *Id.* at 11. And under the fourth claim, he alleges that the conditions of his confinement violate the Due Process Clause. *See id.* at 12.

Regrettably, Ghamoushi-Ramandi makes a slew of arguments in the *ex parte* application that conflate related, yet distinct, legal claims, most of which were not raised in the Petition. He first contends he is likely to succeed on the claim that Respondents failed to comply with the post-removal revocation procedures established in 8 C.F.R. § 241.4(l) and 241.13(i). *See* Dkt. 2 at 10–12. Next, he argues that he is likely to succeed on the purported claim that Respondents' ongoing detention of him violates the "Supreme Court's unambiguous directive that immigration detainees may *only* be held for a period reasonably necessary to bring about the alien's removal from the United States.'" *Id.* at 12 (quoting *Zadvydas*, 533 U.S. at 689). And finally, he argues he is likely to succeed on his claim that his "continuing detainment as a flight risk is not supported by the facts and law established in *Rodriguez v. Robbins*, No. 13-56706 (9th Cir. 2018)." *Id.* at 13–14.

In response, Respondents argue in broad strokes that Ghamoushi-Ramandi has not identified any due process violations or error of law that justifies habeas relief. Dkt. 10 at 11. In so arguing, Respondents recast the claims as if they challenge the immigration judge's underlying bond decision. *See id.* In reply, Ghamoushi-Ramandi contends he is likely to succeed on the first claim in the petition, that Respondents violated his procedural due process rights by failing to provide him notice and a pre-deprivation hearing. Dkt. 12 at 10–14. While he did not argue that he is likely to succeed on his first claim in the *ex parte* application, the Court will exercise its discretion and consider this argument as it responds directly to Respondents' contention that he does not identify "[a]*ny*" due process violation, Dkt. 10 at 11 (emphasis added). *See Sanchez v. Cnty. of San Bernardino*, No. CV 10–09384, 2014 WL 12734756, at *4 (C.D. Cal. Mar. 10, 2024) ("The court can properly

consider evidence and argument offered in reply that is responsive to points raised in the non-moving party's opposition, however.").

As to whether Respondents properly offered Petitioner notice and a prompt hearing upon redetention, the Fifth Amendment's Due Process Clause prohibits the government from depriving a person of life, liberty, and property without due process of law. *See* U.S. Const. amend. V. At its core, due process requires the government to give a person reasonable notice and an opportunity to be heard. *See A. A. R. P. v. Trump*, 605 U.S. 91, 94–95 (2025) (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). These protections extend to all persons physically present in the United States. *Zadvydas*, 533 U.S. at 693. This includes noncitizens whose presence is "lawful, unlawful, temporary, or permanent." *Id.* The Supreme Court has repeatedly held for over a century that noncitizens present in the United States must be afforded certain procedural due process protections, "though the nature of that protection may vary depending upon status and circumstance." *Id.*; *see also A. A. R. P.*, 605 U.S. at 94 ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.") (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *Zadvydas*, 533 U.S. at 693 (holding that the Due Process Clause protects noncitizens subject to a final order of deportation); *Reno*, 507 U.S. at 306 (determining that due process is afforded to noncitizens); *Wong Wing v. United States*, 163 U.S. 228, 238 (1986) (concluding that the Due Process Clause protects noncitizens subject to removal order); *Yamataya v. Fisher*, 189 U.S. 86, 100 (1903) (stating that administrative officers may not disregard due process of law when executing the deportation of noncitizens).

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances."). A two-step analysis is employed to analyze a procedural due process claim. *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). First, a court must determine whether the plaintiff "was deprived of a constitutionally protected liberty or

property interest." *Id.* Second, if a protected interest exists, a court then weighs three factors to determine "whether that deprivation was accompanied by sufficient procedural protections." *Id.* The three factors are (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). These are known as the *Mathews* factors.

Due process usually "requires some kind of a hearing *before* the [government] deprives a person of liberty[.]" *Zinermon*, 494 U.S. at 127; *see also Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978) ("Ordinarily, due process of law requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant [liberty] interest."). However, a prompt post-deprivation hearing may suffice in special cases but only "when prompt action is required, an important government interest is involved, and there is substantial assurance that the deprivation is not baseless or unwarranted." *Shinault v. Hawks*, 782 F.3d 1053, 1058 (9th Cir. 2015).

i.   Constitutionally protected liberty interest

As described above, the Attorney General has discretion to detain and release noncitizens pending removal proceedings. 8 U.S.C. § 1226(a). Upon arrest, the Attorney General and certain authorized officers must initially decide whether to continue to detain the noncitizen or release him on bond or conditional parole. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(c)(8). If a noncitizen is released, this decision reflects a determination by the government that noncitizen is neither danger to property or persons and is likely to appear for future proceedings. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025); *see also* 8 C.F.R. § 1236.1(c)(8). This decision also reflects an implicit promise to the noncitizen that his liberty will not be revoked unless []he 'failed to live up to the

conditions of h[is] release.'" *Pinchi*, 792 F. Supp. 3d at 1034 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)).

Here, Ghamoushi-Ramandi was detained by ICE when he entered the United States. After four to five months in detention, he was released on parole. The government's decision to release Ghamoushi-Ramandi reflected its determination that he did not pose a danger to property or person and is likely to appear for future immigration proceedings. More importantly, in releasing him, the government implicitly promised Ghamoushi-Ramandi that his liberty will "not be revoked unless []he 'failed to live up to the conditions of h[is] release.'" *Pinchi*, 792 F. Supp. 3d at 1034 (quoting *Morrissey*, 408 U.S. at 482).

Ghamoushi-Ramandi thus possessed a "protected liberty interest in remaining out of custody" at the time ICE re-detained him in January 2026. *See Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 933 (N.D. Cal. 2025); *see also id. at* 932 ("[A] noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody."); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) ("When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause."); *Pinchi*, 792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1046 (E.D. Cal. 2025) ("Petitioner's release from custody in January 2024 and ties to his community provide him with a protected liberty interest. The Court must therefore determine what process is due.") (citation omitted); *Wasim v. U.S. Immigr. & Customs Enf't*, No. 2:26-cv-00755, 2026 WL 252352, at *5 (C.D. Cal. Jan. 30, 2026) (same).

ii.    The *Mathews* factors

Having determined Ghamoushi-Ramandi has a protected liberty interest, the Court now weighs the three *Mathews* factors to determine whether his re-detention was

-14-

accompanied by sufficient procedural protections. Based on this record, the factors weigh in favor of concluding that Respondents did not provide Ghamoushi-Ramandi with adequate procedural protections when they re-detained him.

First, Ghamoushi-Ramandi had a significant liberty interest that was affected by his re-detention. Freedom from imprisonment (i.e., detention) lies at the core of the Due Process Clause. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects."). When the government released Ghamoushi-Ramandi, it implicitly promised him that he could remain free so long as he complied with certain conditions. Consequently, he took with him a liberty interest in remaining free from custody upon his release and has enjoyed that interest since. Respondents deprived him of this interest when they re-detained him in June 2025.

Second, there is significant risk that Ghamoushi-Ramandi was erroneously deprived of his liberty interest through the procedures Respondents used here: namely, no notice, no pre-deprivation hearing, and no *prompt* post-deprivation hearing. "Civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *Valencia Zapata*, 2025 WL 2578207, at *3 (quoting *Zadvydas*, 533 U.S. at 690). Due process usually requires that the government provide a noncitizen with notice and a hearing before depriving him of his liberty. *See Zinermon*, 494 U.S. at 127.

These pre-deprivation procedures are pivotal in protecting against the erroneous deprivation of one's liberty because they apprise the noncitizen of the reasons for their potential re-detention and provides them an opportunity to demonstrate why such action may be unwarranted. *See Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1089 (N.D. Cal. 2025) ("Given the absence of any evidence justifying petitioners' detention, there is a significant risk that the deprivation of their liberty in the time between their arrest and a post-arrest bond hearing under § 1226 would be entirely unjustified. Providing them with the procedural safeguard of a pre-detention hearing will have significant value in helping ensure that any future detention has a lawful basis."); *Ramirez Tesara*, 800 F. Supp. 3d at

-15-

1137 (concluding second *Mathews* factor weighed in noncitizen's favor where pre-deprivation hearing would have allowed petitioner to explain why his inability to comply with a condition of release did not justify re-detention).

Of course, a prompt post-deprivation hearing may suffice in special cases "when prompt action is required, an important government interest is involved, and there is substantial assurance that the deprivation is not baseless or unwarranted." *Shinault*, 782 F.3d at 1058. But the evidence in this record shows that ICE detained Petitioner on his way to work under the guise that he would be released after they could ask him some questions. There is no evidence that Petitioner was going to suddenly flee the jurisdiction; nor is there evidence that Petitioner posed an imminent danger to persons or property. Put simply, this was not that special case that justified detaining Ghamoushi-Ramandi without notice or a pre-deprivation hearing. There is thus a significant risk that Respondents erroneously deprived him of his liberty interest by providing him no notice or a pre-deprivation hearing before they re-detained him.

Finally, while the government has a strong interest in ensuring that noncitizens do not pose a danger and will attend their immigration proceedings, the government's interest in re-detaining a noncitizen without notice or a pre-deprivation hearing imposes minimal financial or administrative burdens as compared to the cost of detaining a noncitizen pending a bond hearing, or removal, where it is unwarranted. *See Pablo Sequen*, 806 F. Supp. 3d at 1090 (explaining that the government has minimal interest in re-detaining a noncitizen who does not pose danger or a flight risk because custody hearings are routine and it is likely that the cost to the government of detaining [petitioner] pending any bond hearing would significantly exceed the cost of providing her with a pre-detention hearing); *Ramirez Tesara*, 800 F. Supp. 3d at 1137 (similar); *Pinchi*, 792 F. Supp. 3d at 1036 (similar).

Having weighed the three *Mathews* factors, the Court concludes that Ghamoushi-Ramandi's deprivation of his liberty interest was not accompanied by sufficient procedural protections. He has thus made a clear showing that he is likely to

succeed on his Fifth Amendment procedural due process claim. In turn, this *Winter* factor weighs in favor of granting temporary injunctive relief.

### 2.    Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). As discussed, Ghamoushi-Ramandi has made a clear showing that Respondents likely deprived him of his procedural due process rights when they re-detained him without notice or a prompt hearing. "'[N]o further showing of irreparable injury is necessary.'" *Pinchi*, 792 F. Supp. 3d at 1037 (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005)); *see also Valencia Zapata*, 2025 WL 2578207, at *3 ("It follows inexorably from the conclusion that Petitioners' detention without a pre-detention hearing is likely unconstitutional, that they have also carried their burden as to irreparable harm.") (citation modified).

Accordingly, this *Winter* factor weighs in favor of granting Petitioner temporary injunctive relief.

### 3.    Balance of Equities and Public Interest

In addition, Ghamoushi-Ramandi and "[t]he public ha[ve] a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (quoting *Jorge M.F. v. Wilkinson*, No, 21-cv-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021)). He also stands to suffer considerable harm if he remains unlawfully detained given that Respondents did not afford him with adequate procedural safeguards before his re-detention. Respondents, by contrast, will suffer minimal injury with a short delay in detaining Petitioner. "Faced with a conflict between minimally costly procedures and preventable human suffering, the Court has little difficulty concluding that the balance of hardships tips decidedly in Petitioner['s] favor." *Valencia Zapata*, 2025 WL 2578207, at *4.

-17-

Accordingly, this *Winter* factor weighs in favor of granting temporary injunctive relief.

### 4. Scope of Relief

A temporary restraining order is meant to preserve the *status quo* and to prevent irreparable harm before a hearing can be held on a preliminary injunction. *Granny Goose*, 415 U.S. at 429. For purposes of a temporary restraining order, "[t]he status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to 'the last uncontested status which preceded the pending controversy.'" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)). Moreover, the Ninth Circuit has "long held that injunctive relief must be tailored to remedy the specific harm alleged." *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015).

Here, Ghamoushi-Ramandi's last uncontested status was the moment before his re-detention. Thus, a temporary restraining order requiring his immediate release would return him to the *status quo*. *See Valencia Zapata*, 2025 WL 2578207, at \*4 (collecting cases).

### 5. Bond

A court may issue a temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court "with discretion as to the amount of security required, *if any*.""" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). A district court "'may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm'" to the nonmovant. *Id.* (quoting *Jorgensen*, 320 F.3d at 919). The nonmovant is not absolved of its "obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the

amount of the bond." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003).

Here, Respondents have not presented any evidence that would show a bond is necessary in this case. The Court thus exercises its discretion and waives the bond requirement.

## IV.   CONCLUSION

For the above reasons, the *ex parte* application is **GRANTED** as follows:

1. Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are **ORDERED** to immediately release Ghamoushi-Ramandi from immigration custody. Respondents must file a declaration by April 15, 2026, confirming he has been released from immigration custody. Respondents are further **ORDERED** to place Ghamoushi-Ramandi on the same conditions of release that existed before his re-detention and must not impose any release restrictions on him, such as electronic monitoring, unless deemed necessary at a future hearing.

2. Respondents, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with Respondents are temporarily **ENJOINED** from re-detaining Ghamoushi-Ramandi without notice of the reasons for why they intend to re-detain him and without a pre-deprivation hearing before a neutral decisionmaker, unless special circumstances exist that justify immediate re-detention and a post-deprivation hearing;

3. This order will remain in effect until May 4, 2026, at 5:00 p.m. This order may be extended for good cause or with Respondents' consent;

4. Respondents are **ORDERED TO SHOW CAUSE**, in writing, why this Temporary Restraining Order should not be converted into a preliminary injunction on or before April 24, 2026. Petitioner may file a response by May 1, 2026. The Court will set a hearing only if necessary.

5. Because the Court finds that Ghamoushi-Ramandi is entitled to full scope the requested temporary injunctive relief based on Fifth Amendment procedural due process claim, the Court need not address whether he is entitled to the same injunctive relief as to his remaining claims. *See Doe v. Noem*, 781 F.

-20-

Supp. 3d 1055, 1067 n.2 (E.D. Cal. Apr. 17, 2025) (declining to address petitioner's remaining immigration-related claims because he was entitled to temporary injunctive relief under his APA claim); *L.G.M.L. v. Noem*, No. No. 25-2942, 2025 WL 2671690, at *16 (D.D.C. Sep. 18, 2025) (declining to address petitioners' remaining immigration-related claims where petitioners were entitled to temporary injunctive relief on TVPRA claim); *Okyem v. Noem*, No. 25-CV-2120, 2025 WL 2551137, at *3 (C.D. Ill. Apr. 21, 2025) (declining to address petitioner's due process or Declaratory Judgment Act claims because petitioner was entitled to temporary injunctive relief on APA claims).

**IT IS SO ORDERED.**

Dated: April 20, 2026

HON. SERENA R. MURILLO
UNITED STATES DISTRICT JUDGE